IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FERNANDO MIRANDA CHAVEZ,

    Petitioner,

vs.

JAMES A. YATES, Warden,

    Respondent.

No. CIV S-09-1876 KJM CHS

FINDINGS AND RECOMMENDATIONS

## I. INTRODUCTION

Chavez, a state prisoner, proceeds pro se with an amended petition for writ of habeas corpus [doc #31] pursuant to 28 U.S.C. § 2254. He challenges his conviction for felony assault on a child resulting in death for which he was sentenced to 25 years to life in state prison.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The California Court of Appeal summarized the facts of the offense in an unpublished opinion on direct appeal of Chavez's conviction:

> In November 2006, J.O. had a 13-month-old son, M.O. J.O. no longer had a relationship with M.O.'s father, but she was in a relationship with [Chavez].[FN2] J.O. and [Chavez] lived together about half of the time, and [Chavez] assumed a fatherly role with M.O. J.O. taught [Chavez] the proper way to play with and care

for M.O. She also told [Chavez] not to shake M.O. when playing because it could cause brain injury.

> FN2. At the time of trial in November 2007, J.O. was still in a relationship with defendant and the two had a child together.

On November 27, 2006, M.O. was sick and fussy, teething, running a fever, and had vomited. J.O., M.O., and [Chavez] spent the day together at J. O.'s house. J.O. drove her friend, L.M., to Shasta College that evening. After returning from dropping off L.M., J.O. took a shower while [Chavez] watched M.O.  J.O. heard M.O. scream while she was in the shower. She got out of the shower to check on M.O. and found [Chavez] holding M.O. trying to calm him down. J.O. finished her shower and then put M.O. down to sleep. She stated that when she put M.O. down to sleep, she gave him a bottle, and he appeared to be drinking it. However, J.O. also said that M.O. looked "weird" and did not "look right." J.O. then left to pick up L.M. from school about 30 to 45 minutes after M.O. went down.

About 15 minutes later, [Chavez] appeared at [the neighbor] J.W.'s apartment holding M.O. M.O. was limp and there was vomit and blood on both M.O. and [Chavez]. [Chavez] asked J.W. to perform CPR on M.O. and she called 911.[FN3] Defendant then phoned L.M. to let her know M.O. was being taken to the hospital. L.M. told J.O.

> FN3. According to J.W., [Chavez] did not call 911 himself because "he was fearful because he had been smoking pot earlier."

M.O. was admitted to the emergency room at St. Elizabeth Community Hospital in Red Bluff. He was unresponsive to stimuli at the time of admission and was put on mechanical ventilation. M.O. had a retinal hemorrhage in his right eye and elevated liver enzymes and his CAT scan revealed bleeding in the back of his head. M.O.'s condition was assessed as critical and he was airlifted to the UC Davis Medical Center.

Upon arrival at the UC Davis Medical Center, M.O. had no spontaneous neurologic activity. A "brain death examination" revealed that no part of M.O.'s brain had activity. M.O. was unable to breathe without the aid of a ventilator. Further CAT scans revealed there was blood in the back of his head and his brain was extremely swollen. A possible cause of the retinal hemorrhage and swelling of the brain was shaken baby syndrome.

J.O. requested that M.O. be taken off life support. After being taken off life support, M.O. died quickly on November 28, 2006. The cause of death was determined to be blunt force trauma to the head.

A subsequent autopsy revealed multiple internal injuries to M.O. The injuries consisted of abdominal injuries and head injuries. The abdominal injuries consisted of a tear on the underside of the liver, a large area of bleeding and bruising in the mesentery,[FN4] and bruising of the duodenum.[FN5] The head injuries consisted of a subdural hematoma, a subarachnoid hemorrhage,[FN6] and bleeding at the deepest layer of the scalp. Blunt force trauma was the cause of the head injuries and was the likely cause of the abdominal injuries.

> FN4. The mesentery is a fatty membrane that carries blood vessels from the aorta to the intestines.
>
> FN5. The duodenum is the area where the stomach ends and the small intestine begins.
>
> FN6. Both a subdural hematoma and a subarachnoid hemorrhage involve bleeding at different levels of the brain.

After M.O. was airlifted to the UC Davis Medical Center, the Red Bluff police asked J.O. and [Chavez] to come to the police station to answer some questions. When [Chavez] was questioned regarding whether he shook M.O. (the likely cause of the injuries), he admitted that he "shook him up a little" and "shook him up a couple times." [Chavez] also admitted that he "threw" M.O. up in the air and M.O. landed on the sofa. When it became apparent to the police detectives that [Chavez] had possibly assaulted the child, he was read his *Miranda*[FN7] rights. After being read his rights, [Chavez] continued to speak with the police detectives and admitted to "squeezing" M.O. as well. A DVD of [Chavez]'s questioning by the police was played for the jury at trial.

> FN7. *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694].

[Chavez] was subsequently charged by information with felony murder and felony assault on a child resulting in death. The felony murder charge was later dropped and the case proceeded to trial on the felony assault charge.

The prosecution introduced expert medical testimony regarding the cause and likely circumstances of M.O.'s death. The prosecution's expert, Dr. Gregory Reiber, testified that the injuries M.O. sustained were consistent with being squeezed, shaken, and then having his head slammed down on a hard surface. Dr. Reiber conceded on redirect examination that a fall from five to six feet could have caused the head injuries that resulted in M.O.'s death. However, Dr. Reiber stated that in combination with the abdominal injuries it was "not consistent" that M.O. was only dropped. Additionally, he stated that the abdominal injuries were not consistent with improperly performed CPR because typically the

injuries would occur to the opposite side of the liver.

Dr. Reiber also testified regarding the likely behavior of M.O. after sustaining such a blow to the head. Dr. Reiber testified that he would expect a child to be knocked unconscious for a short period of time. After regaining consciousness, a child would be "sleepy, not very responsive, not very interactive, until lapsing into unconsciousness again from the swelling of [the] brain." Dr. Reiber testified that a child might vomit as a reflex from the swelling in the head 10 to 20 minutes after the initial blow. Dr. Reiber also stated that he would not expect a child to take a bottle after such a head blow and thought it was "unlikely" that a baby would cry because the baby would not fully regain consciousness.

[Chavez] testified on his own behalf. He denied he ever shook M.O. and explained that his previous statements to law enforcement were made because he was "scared" and he thought if he admitted to shaking M.O. the police officers would "let [him] go faster."[FN8] [Chavez] went on to testify that while J.O. was in the shower, M.O. slipped out of his arms and fell to the floor from his shoulder.[FN9] According to [Chavez], M.O. "kept crying" after he fell. [Chavez] testified that he never told J.O. about M.O.'s fall. [Chavez] explained that after J.O. went to pick up L.M. from school, M.O. began to choke and he performed CPR on the child. [Chavez] also stated that while he performed CPR on M.O., the child vomited in his mouth. This caused [Chavez] to run to the kitchen to wash his mouth out. [Chavez] left M.O. on the edge of the bed and when he returned from washing his mouth out, M.O. had apparently fallen off the bed onto the floor.

> FN8. J.O. had testified, however, that [Chavez] admitted to her he shook M.O.
>
> FN9. No evidence of [Chavez]'s height appears in the record.

Defense counsel argued that M.O.'s injuries were the result of being dropped, falling off the bed, and incorrectly performed CPR. Counsel argued that these events in combination caused the fatal head injuries and the abdominal injuries.

Defense counsel requested a jury instruction on simple assault as a lesser included offense. The trial court determined that a simple assault instruction was not supported by the facts of the case; however, the court expressed concern about whether an instruction on assault by means of force likely to produce great bodily injury should be given. Defense counsel asked that the court not instruct the jury on that crime and the court found that it was not supported by the evidence, so the jury was only instructed on felony assault on a child resulting in death.

*People v. Chavez*, No. L 4696618, 2008 WL 4696618, at 1-3 (Cal. App. 3rd Dist. 2008).

The jury found Chavez guilty of the charged offense. He was sentenced to an indeterminate prison term of 25 years to life. The California Court of Appeal, Third District, affirmed the conviction and the California Supreme Court denied a petition for review. Chavez sought habeas corpus relief in state court which was likewise denied.

### III.  GROUNDS FOR RELIEF

Chavez asserts six grounds for relief:

A. The trial court's omission of lesser included offense instructions violated his right to due process;

B. Trial counsel rendered ineffective assistance by failing "to file a *Miranda* motion to exclude" Chavez's statements to police and the DVD recording thereof as taken in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966);

C. Trial counsel rendered ineffective assistance by failing to secure a Neuropathologist to testify as a defense expert;

D. Trial counsel rendered ineffective assistance by failing to object to prejudicial misconduct by the prosecutor during trial;

E. Trial counsel rendered ineffective assistance by failing to object to the sentence imposed as cruel and unusual punishment; and

F. Appellate counsel rendered ineffective assistance.

### IV.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)). This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999). Under the AEDPA, federal habeas corpus relief is also precluded for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

/////

>   (1) resulted in a decision that was contrary to, or involved an
>   unreasonable application of, clearly established Federal law, as
>   determined by the Supreme Court of the United States; or
>
>   (2) resulted in a decision that was based on an unreasonable
>   determination of the facts in light of the evidence presented in the
>   State court proceeding.

28 U.S.C. § 2254(d); see also *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

This court looks to the last reasoned state court decision to determine whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002), cert. dismissed, 538 U.S. 919. The state court's factual findings are presumed correct if not rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Taylor v. Maddox*, 336 F.3d 992, 1000 (9th Cir. 2004). It is the habeas corpus petitioner's burden to show the state court's decision was either contrary to or an unreasonable application of federal law. *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002).

## V.  DISCUSSION

### A.  Lesser Included Offense Instructions

Chavez was charged with felony assault on a child resulting in death. Defense counsel requested an instruction on the lesser included offense of simple assault, suggesting that the jury could find Chavez committed a simple assault when the victim fell off the bed. The trial court found no factual basis for a crime of simple assault and denied the request, but noted there was a possible basis for an instruction on another lesser included offense. The following exchange occurred:

>   THE COURT: ...At least one could present the argument that the
>   head injury and the shaking are separate. I mean, I think under any
>   view of the evidence, if they believe the shaking, for a 13-month-

1  old I think that is an ADW,[1] not a simple assault.  I don't think
there is any reasonable way to see it was simple assault.  I mean,
2  there [are] some evidentiary problems, because that would mean
that the shaking probably had to precede the – would have to come
3  after the head injury.

4  [DEFENSE COUNSEL]: Well I would ask that ADW not be
given.  And if it is the Court's position then that simple assault
5  doesn't apply, then I'm satisfied with the instructions the way they
are.

6  THE COURT: Are you specifically objecting to the Court giving
7  an ADW instruction?

8  [DEFENSE COUNSEL]: Yes.

9  THE COURT: Mr. [Prosecutor]?

10 [PROSECUTOR]: I will submit.  I don't have a strong position one
way or the other.
11
THE COURT: I have some problems with ADW anyway because
12 it's not – that's not really the Defendant's claim: that the shaking is
true and not the head injury.  I mean, his claim is the head injury is
13 an accident and that he didn't shake the victim.

14 I suppose it's possible that he, if he is telling the truth about
shaking the victim to the police and that it happened because the
15 baby's crying, that's inconsistent with the evidence, because after
the head injury the evidence is that this baby would not be crying
16 and doing the things that has been happening [*sic*].

17 I don't have any problem not giving it.  I don't think it is supported
by the evidence.  And given the specific objection to it, I won't
18 give it.

19 (Reporter's Transcript ("RT") at 284-85.)  Thus, the jury was instructed on the charged offense of

20 felony assault on a child resulting in death but not on any lesser included offenses.

21       Chavez claims his right to due process of law was violated by the trial court's

22 omission of instructions on simple assault and assault with force likely to produce great bodily

23 injury.  Respondent asserts such a claim is unexhausted since Chavez's claim of instructional

24 ────────────────

25    [1] On direct appeal, the state court indicated the trial court's reference to an "ADW"
instruction referred to an instruction on "assault with force likely to produce great bodily injury."
26 *People v. Chavez*, *supra*, 2008 WL 4696618 at 3, n.10.

7

error on direct appeal only alleged a state-law basis for relief and did not allege a violation of due process.

For purposes of exhausting state court remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief. *See Duncan v. Henry*, 513 U.S. 364, 365-366 (1995); *see also Anderson v. Harless*, 459 U.S. 4, 6 (1982) ("It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." (citation omitted)). In order to exhaust, the petitioner must fairly present the substance of his federal habeas corpus claim to the state courts. *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Anderson*, 459 U.S. at 6.

The United States Supreme Court has explained:

> In *Picard v. Connor*, 404 U.S. 270, 275 (1971), we said that exhaustion of state remedies requires that petitioners "fairly presen[t]" federal claims to the state courts in order to give the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights" (some internal quotation marks omitted). If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court. Accord, *Anderson v. Harless,* 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982).

*Henry*, 513 U.S. at 365-366. "[T]he petitioner must have either referenced specific provisions of the federal constitution or cited to federal or state cases involving the legal standard for a federal constitutional violation. *Castillo v. McFadden*, 399 F.3d 993, 999-1000 (9th Cir. 2005).

Here, Chavez failed to apprise the California Supreme Court of his claim that the instructional error of which he complained was not only a violation of state law, but also a violation of due process, as claimed in his federal petition. Chavez has failed to exhaust state court remedies with respect to the claim presented.

Putting aside the exhaustion issue, however, solely for purposes of this opinion, the claim still fails on its merits. *See* 28 U.S.C. § 2254(b)(2) ("[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"); *Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005) (a federal court considering a habeas petition may deny an unexhausted claim on the merits only when it is perfectly clear that the claim is not "colorable").

No Supreme Court precedent clearly establishes a requirement that lesser included offense instructions be given in non-capital cases. By contrast, in 1980, the Supreme Court held that a defendant in a capital murder case has a constitutional right to have the jury instructed on a lesser included offense in certain circumstances. *Beck v. Alabama*, 447 U.S. 625, 638 (1980). The Court expressly reserved judgment on "whether the Due Process Clause would require the giving of such instructions in a non-capital case." *Id.* at 638 n.14; *see also Gilmore v. Taylor*, 508 U.S. 333, 342 (1993). In the years following *Beck*, the circuits split on the question whether due process requires lesser included offense instructions in certain instances for non-capital defendants. *See Solis v. Garcia*, 219 F.3d 922, 928-29 (9th Cir. 2000) (citing collected cases). This disagreement evinces the absence of clearly established Supreme Court authority, which precludes relief according to this theory under §2254(d)(1). In addition, under the law of the Ninth Circuit, contentions regarding a state court's failure to instruct on a lesser included offense in a non-capital case fail to present a federal constitutional claim for federal habeas corpus review. *Id.* at 929.

Thus, to the extent Chavez's due process claim is premised on an assertion that a state trial court must instruct on lesser included offenses, it is clearly without merit. Because a criminal defendant is entitled to adequate instructions on the defense theory of the case, however, the failure to instruct on a lesser included offense could implicate a federal constitutional right where the instruction fits the defense theory of the case. *See Solis*, 219 F.3d at 928-29. The defense theory in question must be supported by the law and have some foundation in the

evidence. *Conde v. Henry*, 198 F.3d 734, 739 (9th Cir. 1999).  In addition, in order for a habeas corpus petitioner to be entitled to relief, any instructional error must have had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 622, 637 (9th Cir. 1993).

Here, the omitted lesser included offense instructions were not at all consistent with the defense theory of the case.  As set forth, defense counsel's proffered theory for a simple assault instruction was that the jury could have found that M.O. fell off the bed and sustained injury due to a simple assault by Chavez.  Chavez testified, however, that M.O.'s fall from the edge of the bed was an accident and that he was in another room when this happened.

The defense theory of the case was that M.O. sustained a head injury solely by accident, and that Chavez did not shake or assault M.O.  In this regard, Chavez testified that on November 27, 2006, he played with M.O. by holding his arms while he jumped on the bed and by throwing him two or three feet in the air and catching him.  Chavez then walked around with M.O. on his shoulders, holding M.O. by his arms, but M.O. fell backwards and hit the tile floor.  Chavez testified M.O. appeared a little dizzy or light-headed, but otherwise okay.

Later, Chavez heard M.O. gag or choke; Chavez stuck his finger down M.O.'s throat to see if he had swallowed something.  M.O. threw up and appeared to stop breathing; Chavez put him on the edge of the bed and attempted CPR.  M.O. threw up in Chavez's mouth and Chavez went to the kitchen.  When he returned M.O. was on the floor and still not breathing.  Chavez picked him up and went next door where the neighbor called 911.  In his testimony, Chavez denied shaking or intentionally harming M.O.  He said he told the detective he shook M.O. because the detective told him this was a shaken baby case and he wanted to leave the police station.  He testified he never told the detective about dropping M.O. because he was scared and because the officer had said this was not a blunt force injury case.  In sum, nothing in Chavez's testimony could have reasonably been interpreted by the jury as an assault.  In this vein, defense counsel argued:

> And the law says that in order to prove an assault, each of the following must be present: that a person willfully committed an act, which by its nature would probably and directly result in the application of physical force on another person.
>
> Now, you will get that in writing. But that doesn't mean if you are playing with a young child and he drops that you're guilty of a crime [*sic*]. Taking a child who is fussy and taking a child that you are playing with, putting him on your back and jumping around and having a terrible, terrible accident is not a crime.

(RT at 273-74.)

Chavez's statements to the police, on the other hand, provided some evidence of assault. Chavez admitted that he "shaked him tonight up a couple times," referring to the way he "played" with M.O. (Clerk's Supplemental Transcript ("CST") at 14-15.) Chavez further told police he "shook him up a little" to try to quiet him, spanked him on the butt, and once tossed him up in the air to land on the sofa. (CST at 27-30.) But this evidence was not part of the defense's theory of the case. Defense counsel began closing argument by telling the jury that "what [the prosecutor] hasn't made clear to you is that tragic accidents do happen, and they are not crimes." (RT at 265.) Defense counsel argued that Chavez's statements in the interview were not material to the case:

> And [the prosecutor] talks about the [police] interview. The funny thing is, this isn't a Shaken Baby case, so it really doesn't matter what my client said to the cops about that. And they want you to believe: Oh, this was this nice interview, you know. Oh, you are free to leave. Tell us, just tell us what we want to hear.

(RT at 266.) And further:

> [T]ake a look at that interview, and remember what that was. The officers, although they were acting very nice, saying, "Oh, yes, this will just be a few minutes, come in here and talk to us," they led him exactly where they wanted him to go.
>
> And the ironic thing is that this is not a Shaken Baby case. [M.O.] did not die from the Shaken Baby Syndrome. He died from blunt force trauma. That was clear from the doctor's testimony.
>
> How many times have we heard instances of false confessions, where people eventually just go along where law enforcement

11

> wants them to go?  There is numerous times [*sic*].  There have
> been numerous times of false confessions.  Think how many cases
> are overturned when finally they get the DNA and find out that the
> guy couldn't do it.  It's a false confession.  It certainly was false.
> They got him to say just what they wanted him to say.

(RT at 269-70.)  And to close the argument:

> We are asking that you do justice in this case; that you don't seek
> to blame and punish; that you understand that tragedy does happen,
> and it is not always a crime.

(RT at 275-76.)

Since the lesser included offense instructions at issue were not consistent with the defense theory of the case, their omission did not implicate Chavez's federal right to present a complete defense.  This claim of instructional error is not cognizable on federal habeas corpus.

        B.      Ineffective Assistance of Counsel and the *Miranda* Issue

Sergeant Jason Beeman interviewed Chavez at the Red Bluff Police Department on November 27, 2006; the interview was recorded on DVD.  Trial counsel, Diane Logan, filed a motion to suppress Chavez's statements.  The trial court held a hearing on the motion at which Beeman testified to the following.

Chavez and J.O. traveled willingly to the police department at Beeman's request; Beeman interviewed J.O. first and then Chavez.  Prior to the start of Chavez's interview, Beeman told Chavez he was free to leave at any time, that he did not have to answer any questions he did not want to answer, and that he was not under arrest.  Beeman closed the door to the interview room but told Chavez the door would remain unlocked and that he was still free to leave at any time.  Beeman and Detective Gene Randall interviewed Chavez.  During the course of the interview, Beeman developed a belief that Chavez had caused the injuries to M.O. and at that point he advised Chavez of his *Miranda* rights before continuing questioning.  Chavez did not assert any of his rights and continued to answer questions.  At the end of the interview Chavez was taken into custody.

/////

At the hearing on the admissibility of Chavez's statements, his trial counsel, Ms. Logan, asserted the defense's position that

> [G]iven the close proximity to law enforcement and the small room and the fact that the officers were armed, that although they verbally told my client he was free to leave, that under those circumstances he did not feel free to leave.

(RT at 69.)  The trial court denied the motion to suppress, finding "the evidence establishes that any statements by the Defendant were voluntary, and that he was properly Mirandized." (RT at 69.)  The DVD was played for the jury at Chavez's trial.

Chavez asserts here that trial counsel rendered ineffective assistance "when failing to object and file a Miranda motion to exclude [his] DVD video tape statements made during police interrogation without [ ] Miranda warnings...." (First Amended Petition at 5.)

To demonstrate a denial of the Sixth Amendment right to the effective assistance of counsel, a petitioner must establish that counsel's performance fell below an objective standard of reasonableness, and that he suffered prejudice from the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 690 (1984).  Deficient performance requires a showing that counsel's performance was "outside the wide range of professionally competent assistance." *Id*. at 687 & 697.  Prejudice is found where there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. "Surmounting *Strickland's* high bar is never an easy task," and review under the AEDPA is doubly deferential. *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (citing *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)).  The relevant question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard. *Harrington*, 131 S. Ct. at 788.

When a person in custody is subjected to interrogation, he must first be read his *Miranda* rights in order for the information obtained to be admissible in court. *Miranda v. Arizona*, 384 U.S. 436, 467-68 (1966).  "Statements elicited in noncompliance with this rule may

not be admitted for certain purposes in criminal trial." *Stansbury v. California*, 511 U.S. 318, 322 (1994) (per curiam). For *Miranda* purposes, custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. Two discrete inquiries are essential to the custody determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave. *Thompson v. Keohane*, 516 U.S. 99, 112 (1995). The second inquiry is objective; a court asks whether "there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Maryland v. Shatzer*, 130 S. Ct. at 1224 (citing *New York v. Quarles*, 467 U.S. 649, 655 (1984)).

As set forth, in this case it is undisputed that trial counsel *did* attempt to exclude Chavez's statements as taken in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966); the trial court denied the motion. (RT at 69 ("[H]e was properly Mirandized. And the Motion to Suppress is denied.")) Chavez argues only that counsel filed the "wrong motion" and that instead of a motion to suppress, counsel should have filed "a *Miranda* motion to exclude" the statements prior to trial.

This claim of ineffective assistance fails on the factual basis asserted. Chavez fails to demonstrate, first, that he suffered a *Miranda* violation, and second, that counsel performed deficiently in relation to the *Miranda* issue. A reasonable argument certainly exists that defense counsel satisfied *Strickland's* deferential standard by filing and arguing the motion to suppress Chavez's statements as discussed herein. Chavez further fails to demonstrate prejudice as there is no reasonable likelihood that a motion presented any other way would have been successful. This claim is without merit.

/////

/////

### C. Ineffective Assistance and Expert Testimony

Chavez claims trial counsel rendered ineffective assistance by failing to secure a Neuropatholigist as a defense expert to testify "how far must children fall to sustain fatal fall head injury." In order to demonstrate prejudice as required by *Strickland* (466 U.S. at 93-94), a petitioner asserting that trial counsel acted ineffectively by failing to call a witness must allege what testimony the witness would have given and how it would have changed the outcome at trial. *United States v. Berry*, 814 F.2d 1406, 1409 (9th Cir. 1987). "Speculation about what an expert could have said is not enough to establish prejudice [under *Strickland*]." *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997).

Chavez fails to identify the testimony a Neuropatholigist expert would have given and how the testimony would have been beneficial to the defense's case. This claim is vague, conclusory, and unsupported by necessary factual allegations. *See James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.").

### D. Ineffective Assistance and Prosecutorial Misconduct

Chavez claims trial counsel rendered ineffective assistance by failing object to prejudicial misconduct by the prosecutor. In particular, he asserts counsel should have objected to (1) the prosecutor's inflammatory remarks suggesting that he was guilty of the crime, (2) the prosecutor's improper vouching for the credibility of trial witnesses, and (3) the prosecutor's display of the victim's picture to the jury throughout the course of the trial.

To begin, Chavez fails to identify any improper inflammatory remarks or improper witness vouching to which trial counsel had a meritorious basis to object. No such misconduct appears in the identified portions of the prosecutor's argument.

Citing *Estelle v. Williams*, 425 U.S. 501 (1976) (holding that the 14th Amendment forbids a requirement that a criminal defendant stand trial in identifiable prison clothes) and *Musladin v. Lamarque*, 555 F.3d 830 (9th Cir. 2009) (reversing a murder conviction because

15

spectators wore buttons depicting the alleged victim's photograph) (overruled by *Carey v. Musladin*, 547 U.S. 1069 (2006)),[2] Chavez argues "the presence of the photograph of the decease[d] sitting in full view of the jury throughout the entire trial provides an environment and an impermissible factor which may affect a juror's judgment and prevent [a defendant] from receiving a fair trial [*sic*]."

Due process requires that a criminally accused be afforded a fair trial by an impartial jury that is free from outside influences. *Sheppard v. Maxwell*, 384 U.S. 333, 362 (1966). In this case, the trial record reflects that several photographs were admitted into evidence at trial. (*See* Clerk's Transcript "CT" at 77.) Chavez does not specify whether the photograph at issue was one of those admitted into evidence. If the displayed photograph was admitted into evidence, there was no impermissible outside influence. *See generally United States v. Hinton*, 31 F.3d 817, 824 (9th Cir. 1994) (holding that a prosecutor does not commit misconduct by presenting admissible evidence).

Assuming, for purposes of this opinion, that the photograph was improperly displayed to the jury, Chavez's right to a fair trial was violated only if the display caused "an unacceptable risk... of impermissible factors coming into play." *Norris v. Risley*, 918 F.2d 828, 830 (9th Cir. 1990). There is no basis for inferring that display of the victim's photograph to the jury posed such a risk. Other than to vaguely claim a violation of his right to a fundamentally fair trial, Chavez identifies no meritorious basis for trial counsel to have objected to the prosecutor's conduct. He further fails to demonstrate actual prejudice as he makes no attempt to show a reasonable probability that the outcome of trial would have been different had trial counsel objected. This claim, too, is vague, conclusory, and without merit. *See James v. Borg*,

---

[2] *Musladin v. Lamarque* is no longer good law. On appeal, the United States Supreme Court remanded to the Ninth Circuit, disclaiming federal habeas corpus jurisdiction on the ground that no clearly established Supreme Court precedent set forth a test for inherent prejudice from courtroom spectator courtroom conduct. *See Carey v. Musladin*, 549 U.S. 70, 73-76 (2006).

24 F.3d at 26.

### E. Ineffective Assistance and Sentencing

Chavez claims trial counsel rendered ineffective assistance at sentencing when she did not object to imposition of an indeterminate life sentence of 25 years to life as cruel and unusual punishment under the Eighth Amendment to the United States Constitution or under the California Constitution.

Outside of the capital punishment context, the Eighth Amendment "forbids only extreme sentences that are grossly disproportionate to the crime." *Graham v. Florida*, 130 S. Ct. 2011, 2021 (2010) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and concurring in judgment). The threshold for an inference of gross disproportionality is high. Generally, so long as the sentence imposed by the state court does not exceed statutory maximums, it will not be considered cruel and unusual punishment under the Eighth Amendment. *United States v. McDougherty*, 902 F.2d 569, 576 (9th Cir. 1990); *United States v. Mejia-Mesa*, 153 F.3d 925, 930 (9th Cir. 1998) ("punishment within legislatively mandated guidelines is presumptively valid").

Article I, § 17 of the California Constitution forbids cruel *or* unusual punishment. This prohibition may be violated if a punishment is "'so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.'" *In re Lynch*, 503 P.2d 921, 930 (Cal. 1972). Under the California Constitution, a court must give great deference to the penalty prescribed by the Legislature, which "is in the best position to evaluate the gravity of different crimes and to make judgements among different penological approaches." *People v. Martinez*, 76 Cal.App.4th 489, 494 (1999). "Only in the rarest of cases could a court declare that the length of a sentence mandated by the Legislature is unconstitutionally excessive." *Id*.

Aside from the commitment offense at issue, Chavez has no prior record. Nevertheless, his offense alone is constitutionally sufficient for the state of California to have

17

concluded that he is unable to bring his conduct within the social norms prescribed by the state's criminal laws. *See Ewing v. California*, 528 U.S. 11, 29-30 (2003) (upholding sentence of 25 years to life for theft of $1200 of merchandise against a cruel and unusual punishment challenge) (citing *Rummel*, 445 U.S. at 284). Similarly harsh sentences have been upheld in cases of less serious offenses where the offender had no prior criminal record or a negligible prior criminal record. *See, e.g.*, *Harmelin*, 501 U.S. at 994-95 (rejecting Eighth Amendment claim where petitioner with no prior felony convictions was convicted of possessing 672 grams of cocaine and received a mandatory life term without the possibility of parole); *Hutto v. Davis*, 454 U.S. 370, 370-74 (1982) (rejecting Eighth Amendment challenge to forty year sentence for possession and distribution of nine ounces of marijuana); *Houston v. Roe*, 177 F.3d 901, 906 (9th Cir. 1999) (Eighth Amendment does not require a state to consider mitigating circumstances or impose individualized sentencing in a non-capital case where defendant was sentenced to life without the possibility of parole for murder of his wife), *cert. denied*, 528 U.S. 1159 (2000).

Chavez's is not the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to inference of unconstitutional excessiveness. The violent nature of his offense would not have allowed the state court to properly find gross disproportionality under the Eighth Amendment or that the sentence shocked the conscience and offended fundamental notions of human dignity under the California Constitution. Chavez fails to show deficient performance by trial counsel or resulting prejudice. The claims of ineffective assistance by trial counsel are all without merit.

    F.  Ineffective Assistance of Appellate Counsel

Chavez claims appellate counsel rendered ineffective assistance by failing to raise on direct appeal all the grounds asserted in the pending federal petition. Chavez provides no additional factual allegations in support of this claim for relief.

Appellate counsel does not have a constitutional obligation to raise every non-frivolous issue requested by the client. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Often

appellate counsel may properly omit an issue if counsel reasonably foresees little or no likelihood of success on that issue. *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989); *Knowles v. Mirzayance*,129 S.Ct. 1411, 1422 (2009) ("Counsel is also not required to have a tactical reason- above and beyond a reasonable appraisal of a claim's dismal prospects for success- for recommending that a weak claim be dropped altogether."). The "weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy." *Miller*, 882 F.2d at 1434; *see also Jones v. Barnes*, 463 U.S. at 751 ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.").

Here, as to appellate counsel, Chavez's claim is vague, conclusory, and unsupported by necessary factual allegations. He makes no attempt to show that the issues he claims appellate counsel should have raised were as strong or stronger than the single issue appellate counsel did raise, or how the outcome of the appeal would have been different had they been raised. Instead he alleges only that appellate counsel should have, but did not raise the issues on appeal. A petitioner must do more than this in order to prevail. *See*, *e.g.*, *Jones v. Gomez*, 66 F.3d 199, 205 (9th Cir. 1995) ("[C]onclusory suggestions that his... state appellate counsel provided ineffective assistance fall short of stating a valid claim of constitutional violation.") No relief is available.

## VI.  CONCLUSION

For the foregoing reasons, the petition should be denied. Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability may issue only "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons discussed, a substantial showing of the denial of a constitutional right has not been made in this case.

/////

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus be denied; and

2. A certificate of appealability not issue.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time waives the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). Any reply to the objections shall be filed and served within seven days after service of the objections.

DATED: December 15, 2011

CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE